No. 3704

Second Circuit

(Second Division)

———

**WILLIAM D. SEYMOUR CO., INC., v. THE BEAIRD CORP.**

———

(July 16, 1931. Opinion and Decree.)

———

T. Overton Brooks, of Shreveport, attorney for plaintiff, appellant.

Melvin F. Johnson, of Shreveport, attorney for defendant, appellee.

CULPEPPER, J. Plaintiff corporation alleges it purchased from defendant partnership, and paid for same, three 15 lb. generators, one 50 lb. generator, one 25 lb. generator, and one 100 lb. generator, the invoice price of all of which amounted to $753.34. The date of the purchase was in January, 1921, as well as we are able to tell from the record. The purpose for which the generators were acquired was to resell them at retail. In some instances, these generators, when resold by plaintiff, failed to give satisfaction to plaintiff's customers, and on September 1, 1922, plaintiff addressed the following letter to defendant:

"We have been having a good many complaints on your Generators. As a matter of fact, we shipped one of your Generators into Hattiesburg, and it is going to be returned to you direct to Shreveport.

"It cost us $75.00, salesman, and transportation fare to and from Hattiesburg. Our man has had to go to Hattiesburg three times, and after the third trip, he was not successful in finding out the trouble. The Generator will not work.

"Please advise us disposition on this Generator, as well as the Generators we have on hand at New Orleans, as follows: "1-15 # 2-25 # 1-100 # (This is at Hattiesburg.)

"We regret this very much but we cannot see an outlet from this trouble. If you have any suggestions to make we will be glad to hear from you."

Not receiving a reply to the above letter, plaintiff again wrote defendant on September 18, 1922, as follows:

"We wrote you on Sept. 1st relative to

complaints received on your Generators and have not heard from you to date.

"Did you receive the Generator which was returned to you defective, from Hattiesburg? If so, we would like to hear from you. We have two of your Generators on hand in New Orleans, one 50 lb. and two 25 lb., which we would like you to give us disposition on.

"Don't let this matter drag—let us hear from you."

On September 25, 1922, defendant company, in reply to the above two letters, wrote plaintiff as follows:

"Wish to advise that we have not received the generator from Hattiesburg, but if it is your desire, we will be pleased to have you return this machine to Shreveport.

"We will also be pleased to have you return what machines you have on hand at New Orleans, and same will be credited to you, and we will be glad to wind up this entire matter to our mutual satisfaction just as soon as the machines are returned to us."

On October 3, 1922, plaintiff addressed the following letter to defendant:

"We are pleased to advise that we have shipped you by the L. R. & N. Railroad under date of yesterday (4) 15 lb. Generators, (3) 25 lb. Generators, and (1) 50 lb. Generator, and (1) 100 lb. Generator.

"In addition to this, we had shipped you from Hattiesburg (1) 100 lb. Generator. We are going to ask you to please credit our account with these Generators, and advise us how we stand.

"Thanking you kindly for your attention to this matter, and regretting that we are not able to move these Generators for you, we are,

"Yours truly,
"William D. Seymour Co., Inc."

On November 14, 1922, plaintiff mailed defendant a statement saying defendant owed plaintiff $1,234.31 and requested payment. Defendant made no reply, and plaintiff wrote a second letter. On December 18th, following, defendant replied, stating:

"We wish to state that we do not understand how you arrived at this amount, or on what authority the generators were returned.

"We have you charged with a consignment of generators amounting to $674.60, which we shipped you and that have not been paid for. We have mailed you statement each month showing this amount. On July 22nd you gave us a statement showing six of these machines on hand, and in your letter of Sept. first, you stated that you had four machines, one of which was at Hattiesburg, and that you wished to return to us. In our letter of Sept. 25th we advised you that you could return the machines, and instead of returning the ones that you stated you had on hand, you shipped ten machines.

"Now there has been nothing to indicate that you had more machines on hand, than we had you charged with, and we have never authorized you to return any machines other than those that were shipped you on consignment and remained unsold. We do not see how you could expect us to permit the return of the machines that have been paid for, for credit without us authorizing you to do so."

After numerous correspondence between the parties, plaintiff billed defendant on August 21, 1923, for the following:

| | | |
|---|---|---|
| 3-15 lb. generators, | | 480.00 |
| 1-50 lb. | " | 225.00 |
| 1-25 lb. | " | 125.00 |
| 1-100 lb. | " | 300.00 |
| | | 1130.00 |
| Less 33⅓% | | 376.66 |
| | | 753.34 |
| Plus express charges for generator | | .58 |
| Plus amount allowed on explosion of generator | | 36.95 |
| | | 790.87 |

Considerable correspondence was thereafter had between the parties, in which plaintiff claimed it should be paid for the machines returned; and defendant contended that it had agreed to take back only

those called for in plaintiff's letter of September 25, 1922, being six in number and being machines which had been shipped to plaintiff on consignment and had not been paid for, and that defendant nad only agreed to take those back and give plaintiff's account credit for them. Being thus unable to adjust the matter, plaintiff finally filed this suit on March 19, 1925, for $790.87, with legal interest from October 31, 1922. This amount is shown from the petition to have been made up of the following generators: Three 15 lb., one 50 lb., one 25 lb., and one 100 lb., aggregating at their invoice price, $753.34; also 58 cents for express on parts of generators, and $36.95 for the amount allowed for repairs on a generator which had exploded and was repaired. Plaintiff alleged it had paid defendant for these generators, and that defendant was obligated to refund the money paid at their invoice prices.

Defendant filed exceptions of no cause or right of action, which were overruled. Exceptions of vagueness were filed, in response to which plaintiff filed several supplemental and amended petitions. Finally defendant answered setting up substantially the same position taken in its letter above quoted. It averred that the generators alleged to have been returned had been sold by defendant to plaintiff on consignment, had never been paid for, therefore, when returned to defendant and credit allowed for same, it balanced and canceled plaintiff's account.

Upon these issues, the case went to trial, resulting in a judgment rejecting plaintiff's demands. Plaintiff has appealed.

The solution of the case devolves upon whether plaintiff purchased the generators outright and paid for them, thereby entitling plaintiff to a return of its money upon its return of the generators to defendant, or whether defendant shipped them to plaintiff on consignment, and they had not been paid for at the time of their return, in which event, of course, defendant could only be expected to merely credit plaintiff's account back according to the invoice prices.

The testimony is somewhat confusing; that of plaintiff and defendant conflict on several material points.

Some time in 1919, plaintiff and defendant, through Mr. Keating, vice-president of plaintiff company, and Mr. Beaird, member of defendant partnership, entered into an agreement by which plaintiff should represent defendant in the New Orleans territory for the sales of automatic feed acetylene generators, same to be manufactured at defendant's place of business in Shreveport. Mr. Keating testifies (page 13) that he endeavored to get Mr. Beaird to ship his company generators on consignment, and that Mr. Beaird told him the only way he would deal would be for Mr. Keating to buy so many generators outright, and then he would ship him some on consignment. Mr. Keating says he agreed to this proposition, with the proviso that Mr. Beaird would absolutely stand behind the goods, which Mr. Beaird agreed to do. Mr. Keating was asked the question on the witness stand if that was the agreement between the two firms always. His answer was:

"On that particular purchase, that was the original, I made that one myself."

"Q. Which one?

"A. So many generators on consignment and so many to be bought outright.

"Q. Was that the situation at the time of this conference?

"A. Absolutely, yes, we had some of the generators on hand.

"Q. By some on hand you mean some on hand that had been paid for?

"A. Yes, and some out among the trade and we had received complaints from several places about the generators. Mr. Beaird was in New Orleans and I told him about it. I said, 'We are having a lot of trouble with these generators, and they are beginning to take welding work away from us and the best thing to do is to let us ship them back.' He said, 'Try to sell those generators and if necessary we will give a discount and if worst comes to the worst we will let you return them.' He told me that in the office."

Mr. Keating was not certain as to the date this conversation between him and Mr. Beaird took place, but fixed it, as well as he could recall, in 1923. He said the correspondence would tell. He states he only saw Mr. Beaird twice, one time in Shreveport and one time in New Orleans. It was in Shreveport that he had the agreement with Mr. Beaird for the sale and consignment of the generators, and that was in 1919, during the war, according to Mr. Keating. He says the generators sold "pretty good" at first. Asked if he did not order about six on consignment in fall of 1920, he said, "Perhaps we did." Asked if he paid for those, he said, "If we sold them we paid for them." Asked, "How do you know?" he did not explain, but proceeded to relate some transaction he had had with Mr. Beaird before his trip to Shreveport, in no way connected with the question. Then follows a lot of confused testimony by Mr. Keating, whereby counsel was endeavoring to ascertain from the witness how many generators were on hand that were paid for, how many not paid for, how many on consignment paid for and not paid for. He cold not tell, only from what seemed to be shown on a memorandum he claimed was taken from the stock record made up by some one else on a piece of scratch paper which plaintiff offered and filed in evidence in connection with Mr. Keating's evidence, and which

defendant's counsel objected to as being rank hearsay.

This document seems to be plaintiff's main reliance for proof in connection with the testimony of both Mr. Keating, vice-president, and Mrs. Gringy, general supervisor, of plaintiff's company's welding business. From this evidence, as well as all other evidence in the record, we are unable to definitely determine the number of generators plaintiff had on hand at any one time paid for and unpaid for. Nor are we able to determine which of those returned on October 2, 1922, had been paid for and which had not. While it is not shown for what reason the district court judge rejected the plaintiff's demands, we suspect it was because plaintiff's proof was not sufficiently definite and certain to warrant the basis of a judgment for any amount. The document marked "D-81" apparently showed the number of machines on hand at the time of Mr. Beaird's visit to New Orleans, yet Mrs. Gringy testifies that was "perhaps over a year" before the time plaintiff returned the nine generators to defendant. Therefore, that document, if admissible in evidence, cannot be relied upon to determine how many of those returned a year or more later had been paid for and how many had not, nor how many of them had been sold outright and how many on consignment. Defendant's position is that by giving credit for the generators returned it balanced its account with plaintiff. According to defendant's ledger sheets, as explained by its bookkeeper, Mrs. Bain, there was a balance due by plaintiff to defendant of $660.60 as of date January 14, 1922. Mr. Beaird, called by defendant, testified that he did not have the conversation in New Orleans with Mr. Keating as testified about by Mr. Keating and Mrs. Gringy, and that he could not have had it, as the only time he

ever saw Mr. Keating was in Shreveport, and it was there that he had his only conversation with him, and that was before he ever shipped Mr. Keating generators on consignment. He denies he ever agreed to take any of the generators back, except in his letter of September 25, 1922, wherein he agreed to take four that plaintiff said it had on hand, referred to in plaintiff's letters of September 1st and 18th. He says he never did agree orally or in writing with any one to take back any of the generators which had been sold to plaintiff outright. He says that when he received the returned generators he credited plaintiff's account with them and considered the account settled and closed. He says he did not return any of the generators to plaintiff, but wrote plaintiff the letter of November 14, 1922. This letter is in the nature of a protest at plaintiff's having sent nine generators instead of four as mentioned in plaintiff's previous letter. He says also that plaintiff did not demand the return of any of the machines; that defendant was anxious to get the matter settled and just kept the shipment and canceled plaintiff's account, and considered the matter at an end. He states he discussed the matter with Mr. Brooks, attorney for plaintiff, some time after receiving the shipment, and told Mr. Brooks what he thought would be an amicable adjustment of the matter. He says he told Mr. Brooks that all the generators were on hand and he was perfectly willing for plaintiff to have them back if plaintiff wanted them. This was in the latter part of 1922. Nothing further appears to have been done about the matter, until in March, 1925, when plaintiff filed suit. Mr. Beaird testifies that in the meantime his company made no effort to sell any of the generators except five, which he considered theirs by reason of the fact they had been shipped on consignment and had not been paid for, and which he is not certain but probably these five were sold; that the ones left on hand are worthless.

It has been suggested by counsel for defendant that plaintiff's claim is a stale one. We are inclined to agree with counsel on this point. Besides, the character of proof submitted by plaintiff is uncertain and rather indefinite, as well as contradicted by defendant in some of its most material aspects. As to the machines returned, plaintiff's witnesses could not tell positively which ones had been paid for and which had not. The testimony of Mrs. Gringy and Mr. Keating that Mr. Beaird visited their office in New Orleans and agreed to the return of certain of the machines was flatly denied by Mr. Beaird, who testified that could not be true because he made no visit to New Orleans about that time. So the character of that evidence is such as that it does not preponderate over that of defendant.

Defendant had on its books at the time an account against plaintiff amply large to offset the invoice price of what reasonably appears to have been the machines unpaid for. As to whatever number there might have been of the machines paid for returned, the definite number and price of which is not shown, defendant entered a protest against their being shipped to it, and later advised plaintiff's attorney of defendant's willingness to return them, never did dispose of them, and they are now worthless. We do not think at this late hour, under all these circumstances, plaintiff is entitled in law or good conscience, to take from defendant anything in this suit.

For these reasons, the judgment of the lower court is affirmed.